| | |
|---|---|
| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |

Cone Insurance Group, LLC, §
§
　　　　Plaintiff, §
§
versus § Civil Action H-11-1771
§
Blue Cross Blue Shield of Michigan, et al., §
§
　　　　Defendants. §

# Opinion on Summary Judgment

1. *Introduction.*

　　A fiduciary for a group of retirees fired its insurance broker after it refused to negotiate its commissions and stopped working. The broker sued the fiduciary and the fiduciary's agent for breach of contract because it says that it could not be fired for three years. The contract does not immunize the broker for a term, and it breached the contract that it is trying to enforce. The fiduciary and its agent will prevail.

2. *Background.*

　　In 2005, the Delphi Corporation declared bankruptcy. As part of its reorganization, it needed to eliminate insurance for its retirees. The retirees and Delphi agreed for Delphi to buy insurance for them by funding a trust.

　　To administer the trust's acquisition of insurance, the bankruptcy trustee – through a committee of retirees – appointed a board of trustees. In March of 2009, the trust hired Cone Insurance Group to be its broker for three years – as long as it met the needs of its retirees.

　　As its broker, Cone agreed to negotiate for favorable insurance for the trust's beneficiaries. In July of 2009, it bought insurance from Blue Cross Blue Shield of Michigan. The trustees authorized Blue Cross to pay Cone commissions ranging from 1% to 3% of the premiums. Because of this authorization, Blue Cross contracted with Amy Cone and Cathy Cone for them to serve as its agents – agents in the insurance, not common-law, sense.

In February of 2010, the parties negotiated their rates for the next year. Blue Cross had wanted to increase premiums. With Cone's help, the trustees negotiated for only a small increase. Cone says that the trustees agreed to pay it the same commissions for 2011.

Throughout 2010 and 2011, the trustees became dissatisfied with Cone's work. They say that it was acrimonious. Because of this tension, Cone says that the trustees and Blue Cross privately discussed reducing its commissions.

In October of 2010, the trustees asked Cone to reduce its commissions to 0.78% of the premiums. It refused, citing its "expertise" in these plans. On October 7, Cone told the trust that it would not work on the 2011 benefit program until the trust agreed to pay it the higher commissions.

On February 25, 2011, the trustees fired Cone Insurance Group. On April 12, Cone sued the trustees – Carol Harvey-Light, Vince J. Wilson, James A. Baker, Marianne Baker, Den Black, and Joseph J. McHugh – and Blue Cross Blue Shield of Michigan.

3.   *Contract.*

Cone and the trustees have no fully-specified contract; two letters are the only evidence of their agreement. Blue Cross and Cone, however, had a written agreement, memorializing Blue Cross's designation of Cathy Cone and Amy Cone as its agents.

On March 9, 2009, the trust wrote a letter to "whom it may concern" acknowledging that Cone was their broker. The letter explains Cone's responsibility to find insurance for the retirees. It also says that Cone will serve for a minimum of three years as long as it meets the retirees's needs. It does not specify the commissions that Cone will earn.

One month later, Cone and the trustees met to discuss the terms by which Cone would serve as their broker. A former trustee, William Gifford, says that the terms were: (a) Cone would work for a minimum of three years; and (b) it would earn commissions ranging from 1% to 3% of premiums depending on the member's age.

On July 29, 2009, the trust wrote Blue Cross that it must pay Cone a 1% commission for members under 55 and a 3% commission for those over 55. The letter also says that the commissions may be "discontinued or modified at our annual rate renewal." Cone says that this language was added by Blue Cross and was not part of its contract with the trust. Blue Cross apparently includes this language in all of its contracts with its insurance agents. It is in the contract.

Although there was a working deal between Cone and the trust, the terms about early termination and commissions were not specified.

4. *Breach.*

During a telephone call on October 5, 2010, the trustees asked Cone to reduce its commissions to 0.78% of the premiums. Two days later, Cone refused to keep working on its benefit-enrollment program until the parties agreed about its commissions.

It says the trustees were wrong to offer it reduced commissions because of its "expertise" and the onerous work required to complete the job. Requesting a discussion about compensation does not breach the agreement. No term prohibits imprudent offers or a request to negotiate.

Because Cone quit working before every supposed breach by the trust, it may not recover under the contract that it unilaterally terminated. Cone may not violate a contract by refusing to work and then use the same contract to stop the trust from firing it.[1]

5. *Termination.*

Cone says that the trust breached the contract when they fired it before its three-year term elapsed. The contract, however, did not guarantee that Cone would serve as its broker for three years.

Both letters address the duration of the contract. The letter of March 9 says that Cone will work for a "minimum of 3 years, *provided the services received by the Delphi retirees meet the requirements of their retirees*" (emphasis added). On its face, the letter allows the trustees – as fiduciaries for the retirees – to fire Cone for poor performance.

The letter of July 29 also says that Cone's commissions may be "discontinued or modified at our annual rate renewal." Cone says that this letter was addressed to Blue Cross and that Blue Cross added this language without its consent. On the other hand, the letter is consistent with the March 9 letter, and Cone did not object contemporaneously.

The parties did a poor job memorializing the terms of their agreement, but what they did write says that Cone may be fired.

---

[1] Mustang Pipeline Co. v. Driver Pipeline Co., Inc., 134 S.W.3d 195, 196 (Tex. 2004).

Cone says that it performed excellently. Its sense of grandeur was not shared by the trustees and is not the legal standard. Having reviewed e-mails that Cone sent to the trustees, the reasons that they found Cone acrimonious are clear. The trust was free to conclude – as a business judgment – that Cone's obstreperousness rendered it unfit to negotiate successfully on behalf of the retirees.

6. *Employee Retirement Income Security Act.*

A contract to perform a service for a plan regulated by the Employee Retirement Income Security Act of 1974 must be reasonable.[2] If the terms of a contract stop serving the aims of the plan, the plan must be able to terminate it on short notice without a penalty.[3]

The trustees – and their agent Blue Cross – have to comply with these regulations in serving Delphi's retirees. The trust says that Cone's interpretation of their contract as a fixed term is unreasonable. When Cone's brokering proved counterproductive, the Act required the trust to fire Cone – no matter what the contract said.

Cone says that the Act does not preempt its contract because it could not sue the trust under the Act. It has confused preemption with basic contract law. Cone contracted with the trustees, knowing that the trust was obliged to cancel the contract if it turned burdensome.

Cone cannot contract around the law.[4] When a contract may be reasonably understood different ways – some of which would render it illegal – it is construed to avoid illegality. A contract that does not allow the trust to fire Cone for three years is unreasonable and, therefore, illegal under the Act.

7. *Blue Cross.*

When the trust fired Cone, Blue Cross stopped paying it commissions on the trust's work. Cone says that this breached its contract with Blue Cross. It wants to keep getting paid after it was fired.

---

[2] 29 U.S.C. § 1108(b)(2) (2012).

[3] 29 C.F.R. § 2550.408b-2(c).

[4] Lewis v. Davis, 199 S.W.2d 146, 148-49 (Tex. 1947).

As long as Cone was the trust's broker, Blue Cross paid its commissions. In September of 2010, the trust gave Cone a rate sheet that detailed its pay for 2011. Cone asserts nakedly this was a final offer. One month later, the trust gave Cone a revised sheet with 0.78% commissions for 2011 that it refused.

Blue Cross's contract with Cone says that a broker's refusal to accept a change in her commissions terminates her contract. When the Cones refused the reduced commissions, they ended their contract with Blue Cross.

Cone objects that the trust – as opposed to Blue Cross – notified it of its intent to reduce its commissions. It also says that this notice was not called a "schedule of commissions." These arguments are illustrative; they rest on insubstantial technicalities derived from tortured constructions. Cone received eminently clear and authoritative notice that its commissions were being reduced. It was not confused: its information came directly from the principal, not merely its agent.

Cone says that the trust breached two other terms of the contract: (a) Blue Cross did not contemporaneously inform Cone of its communications with the trust; and (b) the trust did not hire another broker after it was fired. Cone has no facts to support either contention. It also cannot enforce a contract that it had terminated by refusing to accept a change in its commissions. It has no injury if those are breaches somehow.

8. *Torts.*

On June 14, 2012, the court dismissed Cone Insurance Group's business disparagement, tortious interference, civil conspiracy, and fraud claims. All of these claims were attempts to tortify a contract dispute. Cone has not articulated factual support for anything except a contract claim. The final claim for quantum meruit is also barred because there was a contract between the parties.

9. *Conclusion.*

Cone Insurance Group will take nothing from Blue Cross Blue Shield of Michigan and the trustees – Carol Harvey-Light, Vince J. Wilson, James A. Baker, Marianne Baker, Den Black, and Joseph J. McHugh.

Signed on August 15, 2014, at Houston, Texas.

Lynn N. Hughes
United States District Judge